# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-882


RANDEL BROWN

VERSUS

EAST SIDE WATER SYSTEM, INC.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, DOCKET NO. 75510-B
HONORABLE GARY J. ORTEGO, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE
**\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

## AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.

Pickett, J., concurs in the result.

Jonathan C. Vidrine
P. O. Drawer 1019
Ville Platte, LA 70586
Telephone: (337) 363-2772
COUNSEL FOR:
        Plaintiffs/Appellees – Randel Brown, et al.

Jacob B. Fusilier
Fusilier & Associates, LLC
P.O. Box 528
Ville Platte, LA 70586
Telephone: (337) 363-6661
COUNSEL FOR:
        Defendant/Appellant – East Side Water System, Inc.

**COOKS, Judge.**

The defendant corporation appeals the judgment of the trial court in favor of numerous members/shareholders of the corporation that "canceled and invalidated" an action by its board of directors to increase the quorum required for elections from ten percent to fifty percent. The trial court also set dates for new elections to be held using the previous ten percent quorum.

## FACTS AND PROCEDURAL HISTORY

The East Side Water System, Inc. (hereafter East Side), a non-profit corporation located in Evangeline Parish, Louisiana, was established in 1969. The articles of incorporation state in Article V that "[t]he corporate powers and management of this corporation shall be vested in, and exercised by, a board of directors of seven (7) members, to be elected annually. . ." The articles go on to state that "[a]t all elections for directors, as well as at the other meetings, of the members, each member shall be entitled to one vote, and a majority of all members shall decide all elections or any question coming before any such meeting."

In accordance with the provision that "a majority of all members shall decide all elections," it became practice that a quorum of fifty percent of the membership was required for a valid election. Article V also provided that a "majority of the directors shall constitute a quorum; and a quorum shall be necessary to consider any questions that may come before any meeting of the directors." It was argued by the plaintiffs in this matter that the requirement of a majority to constitute a quorum was limited to the board of directors and was not required by the articles of incorporation for elections of the board of directors by the general membership. This is not correct. Although Article V did not use the word "quorum" when discussing the requirements for elections by the general membership, its wording makes clear that "a majority of all members shall decide all elections or any question coming before any such meeting." Thus, in effect the

2

articles of incorporation required a majority of the members for a quorum for elections or to transact business.

The trial court noted that "in the first years" of the corporation's existence, there were less than 100 members, and it was "reasonably easy" to attain a fifty percent attendance of members to vote in the annual election of the board of directors. However, this became more difficult as the size of the corporation increased, and in 2004, the board of directors amended the bylaws of the corporation to make a quorum for a valid election of the board of directors ten percent of the membership of the corporation. The trial court noted the justification for this move was that with the significant growth of the membership, "a 10% quorum and voting requirement for a valid election was more feasible, appropriate and in the best interest of the corporation and its membership."

Over ten years later, at a March 11, 2015 board meeting, the board of directors voted to raise the election quorum threshold from ten percent to fifty percent of the membership. It justified this move by arguing it was simply bringing the bylaws back into compliance with the articles of incorporation. Shortly thereafter, on May 14, 2015, a single shareholder, Randel Brown, filed a declaratory judgment suit seeking to overturn the board of directors' decision to raise the election quorum to fifty percent and seeking reinstatement of the ten percent quorum. Plaintiff also requested the court order defendant to produce for copying and inspection certain corporate documents and financial information and further alleged there was a breach of fiduciary duties by the board of directors as to certain financial and operational expenditures and expenses.

Exceptions were filed and granted by the trial court because (1) the plaintiff did not have enough shareholders to meet the statutory requirements for a shareholder suit; and (2) an action for declaratory judgment was not the proper procedural device in this matter. The plaintiff amended his suit, adding sufficient

3

shareholders and changing the procedural device from an action seeking declaratory judgment to a writ of mandamus.

Trial on the merits was then held on June 17, 2016. The trial court denied East Side's Exception of No Cause of Action alleging the writ of mandamus filed by Plaintiffs was not the appropriate procedural device for the relief sought. The trial court noted that Louisiana is a fact pleading state, and the petition sufficiently informed East Side of the nature of the cause of action asserted and alleged facts sufficient to allow East Side to prepare a defense. Several directors and shareholders were called to testify at the hearing. At the close of trial, the matter was taken under advisement by the trial court. A judgment was signed on July 15, 2016 (following the trial court's written reasons for judgment rendered on June 30, 2016). The judgment dismissed Plaintiffs' claims stemming from an alleged breach of fiduciary duty as to certain financial and operational expenditures by the board of directors. The trial court granted Plaintiffs' request for access to review and copy certain corporate information and documentation. Lastly, the trial court declared the action by the board on March 11, 2015 to increase the election quorum from ten percent to fifty percent be "canceled and invalidated." The court also ordered the "previous 10% quorum and voting membership for a valid election be and is hereby re-instituted immediately herein." The trial court then set a date for a "replacement" election for September 6, 2016 and for staggered elections thereafter.

East Side has appealed the portion of the judgment pertaining to the quorum requirement for elections, assigning the following assignments of error:

1. The Trial Court committed manifest error when it held that the corporation's board of directors breached their fiduciary duty to the company by voting to return the quorum threshold to required 50% from 10% of the membership.

4

2. The Trial Court committed manifest error when it allowed cause of action to continue despite the fact that it was procedurally incorrect vehicle for the plaintiff's relief sought.

## ANALYSIS

In its second assignment of error, East Side argues the Plaintiff used a procedurally incorrect vehicle for the relief sought and granted by the trial court. It maintains the relief sought should have been urged by a writ of quo warranto, not by a writ of mandamus, and the trial court "committed manifest error when it denied the Defendant's Exception of Use Improper/No Cause of Action." The trial court specifically addressed this argument at the hearing below, and concluded as follows:

> . . . the Court finds that the factual pleading of the petition and the supplemental petition is enough to uh. . . to put before the Court those issues that it's put before the Court whether it's called a Writ of Mandamus, whether it's called a Summary Judgment act or whatever it is, therefore, the Court finds that it is ready to go.

As the trial court noted, Louisiana is a fact pleading state under the Louisiana Code of Civil Procedure. *Springer v. Nannie O'Neal Apts.*, 13-570 (La.App. 3 Cir. 11/13/13), 125 So.3d 606. Louisiana Code of Civil Procedure Article 854 provides that "[n]o technical forms of pleading are required." A plaintiff's petition is sufficient as long as it fairly informs the defendant of the general nature of the cause of action and alleges facts sufficient to allow the defendant to prepare a defense. *Washington v. Flenniken Constr. Co.*, 188 So.2d 486 (La.App. 3 Cir.1966). Accordingly, we find no merit in East Side's contention that the trial court erred in denying its exception of no cause of action.

In its first assignment of error, East Side argued the Board's March 11, 2015 action to amend the bylaws to increase the election quorum from ten percent to fifty percent was a breach of its fiduciary duty and the trial court manifestly erred

in finding otherwise. Although we agree the trial court did not err in invalidating the Board's March 11, 2015 action, we do so for different reasons.

We note, initially, that the record before us includes the articles of incorporation and a copy of the bylaws when they were amended in 2004, changing the quorum requirement from 50% to 10%. We have no copy of any previous bylaws, and are unclear as to how they read prior to "amendment' by the board of directors in 2004. Following the amendment in 2004, the bylaws at Article VII, Section 4 specifically read as follows:

> At any meeting of the members of the corporation, ten percent (10%) of the members of the corporation shall constitute a quorum for the transaction of business. The voting powers of the members of this corporation shall be equal, each member shall have one vote only and no voting by proxy shall be allowed.

Apparently, this amended bylaw was followed as the procedure for general elections for ten years, until at a March 11, 2015 board meeting, *the board of directors voted* to raise the election quorum threshold from ten percent to fifty percent of the membership and amended the bylaws to so reflect.

The trial court ruled this 2015 action by the board was invalid, specifically finding East Side failed to provide "a valid or even reasonable reason or explanation in their testimony as to any benefit whatsoever that would result or occur pursuant to their action." The trial court went on to state the following in regards to the evidence presented at trial:

> The evidence presented at the hearing, along with the corporate records indicates in every election recently held (2013-2015), which includes the election/re-election of all the current board of directors, shows that it has been very close to failing and struggled to reach to reached [sic] the required 10% membership voting quorum necessary for a valid election (the 2014 election had the most voting members with almost 200 members voting – 1,100 members @ 10% = 110 voters required), and further shows that these last several annual elections would have also failed to attain this newly amended 50% membership voting (1,100 members @ 50% = 550 voters for valid election); thereby raising the real issue and possibility of the membership/shareholders of this corporation ever being able to

6

achieve a "valid election" as to the election and/or re-election of the corporation's board of directors in all future elections.

. . .

Additionally, and most interesting to this court and this issue, is the evidence and testimony at the hearing shows that, pursuant [to] East Side's articles of incorporation and by-laws, that if the next and future election(s) fail to secure the new mandatory 50% of the voting membership and therefore being invalid, then the current board of directors are authorized to **appoint** to the board of directors their _choice_ to serve as board of director members until the next valid election. Therefore, the court finds, whether intentionally or unintentionally, this new mandatory 50% of the voting membership does thereby create the great possibility and probability of allowing the current board of directors to be appointed and/or re-appointed following each invalid election, thereby maintaining and allowing the present directors to continue to serve basically at the current board of director's own pleasure, and thus creating at least the appearance of improprieties; and therefore said action and vote [is] definitely not in the best interest of the corporation and its membership as required by Louisiana law.

Supporting this finding of the trial court was the testimony of John Vidrine, a member of East Side's Board of Directors and the secretary-treasurer, who testified as follows concerning his opposition to the board's attempt to change the quorum requirements:

. . . First of all fifty percent I felt was not . . . was not doable. We've never had fifty percent of the membership vote. Not only that, for over ten years it had been running at ten percent so I felt that the only reason that we wanted to change was to make sure our mem. . . our Board members could not be replaced I felt was unfair.

John Todd Deville, who was a Board of Director's member for thirteen years and the President of the Board for six years, testified at the time of trial there were approximately 1,050 members of the corporation. Mr. Deville stated in his testimony he could not remember any election during his time where 500 members showed up to vote. This further buttressed the Plaintiffs' point that a fifty percent quorum was not feasible to hold valid elections.

East Side's primary argument to overturn the trial court's judgment is that the trial court committed manifest error in finding the board of directors breached

7

its fiduciary duty because it contends all the board did was amend the bylaws back into compliance with the articles of incorporation. East Side notes that if the bylaws of a corporation are in conflict with the articles of incorporation, the articles of incorporation take precedence.

The testimony establishes the articles of incorporation have never been amended since adopted, except once to allow for members to vote by proxy. Passage and amendment of the bylaws cannot serve to amend the articles of incorporation. Louisiana Revised Statutes 12:237, sets forth the methods by which a corporation can amend its articles of incorporation:

> A. A corporation may amend its articles in compliance with any method stipulated in its articles.
>
> B. If the articles do not stipulate a method of amendment, or do not stipulate in detail the procedure for amendment thereof, an amendment altering the articles may be adopted by two-thirds in interest of the voting members present, at any annual or special meeting of members the notice of which set forth the proposed amendment or a summary of the changes to be made thereby. For purposes of this Subsection, a majority of the members shall constitute a quorum and a quorum must be present at the meeting at which the amendment to the articles is to be considered. The notice of such meeting must be transmitted to the members not less than thirty days prior to the meeting.

The court in *Lain v. Credit Bureau of Baton Rouge, Inc.*, 93-1166, p. 5 (La.App. 1 Cir. 4/8/94), 637 So.2d 1080, 1085, *writ denied*, 94-2010 (La.11/4/94), 644 So.2d 1049, discussed La.R.S. 12:237, explaining as follows:

> As Louisiana Revised Statute 12:237 states, the *articles* must provide the method or detailed procedure for amendment. As the statute plainly provides, the method or detailed procedure must be set forth in the *articles* and not, as defendant contends, in the by-laws or by more general provisions of the Louisiana Non-Profit Corporation Law.

A review of East Side's articles of incorporation reveal there is no procedure set forth in the articles delineating the required method for amending the articles of incorporation. In the absence of such procedure, La.R.S. 12:237(B) provides the method to be used to amend the articles of incorporation. A review of that statute

8

indicates amendment of the articles requires, after proper notice is sent to the members, a quorum of a majority of the members and a two-thirds vote to amend the articles by the members in attendance. The Board's 2004 unilateral decision to amend the bylaws to set forth a quorum of ten percent in order to hold valid elections and transact business was contrary to the procedure set forth in La.R.S. 12:237(B). Thus, the 2004 Board vote to amend the bylaws did not serve to amend the articles of incorporation. Moreover, this bylaw amendment conflicted with the articles of incorporation.

We share the trial court's concern that the Board's 2015 amendment of the bylaws to the 50% quorum creates a "great possibility and probability of allowing the current board of directors to be appointed and/or re-appointed following each invalid election, thereby maintaining and allowing the present directors to continue to serve basically at the current board of director's own pleasure."

As set forth, the articles of incorporation have provided from the inception of the corporation that "[a]t all elections for directors, as well as at the other meetings, of the members, each member shall be entitled to one vote, and a majority of all members shall decide all elections or any question coming before any such meeting." This clearly establishes a required quorum of 50 percent of all members for a valid election of the board members to take place.

Louisiana Revised Statutes 12:1-206(B), plainly sets forth the bylaws of a corporation "may contain any provision for managing the business and regulating the affairs of the corporation *that is consistent with law or the articles of incorporation.*" (Emphasis added.) Thus, "if there is any inconsistency between the bylaws and the articles, the articles control." *Wells v. Fandal*, 13-620 (La.App. 5 Cir. 2/12/14), 136 So.3d 83, 88.

We are mindful that the fifty percent quorum requirement is an onerous burden, but the law in this instance provides the procedure that is required to

change the quorum requirement when it is impractical or impossible to secure the required attendance of the members. In the absence of a more specific provision in the articles of incorporation addressing the subject, La.R.S. 12:231(3), in pertinent part, provides as follows:

> A members' meeting properly called on due notice, if notice is required, may be organized for the transaction of business whenever a quorum is present. Unless otherwise provided in this Chapter or in the articles or by-laws, the following rules shall apply:
>
> . . .
>
> (3) If a meeting cannot be organized for lack of a quorum, those present may, except as otherwise provided in this Chapter, adjourn the meeting to the time and place which they determine. Notice of the second meeting shall again be attempted pursuant to R.S. 12:230. However, in the case of any meeting called for the election of directors, those who attend the second of such adjourned meetings, although less than a quorum as fixed in Paragraph (1) of this Section, or in the articles or by-laws, shall nevertheless constitute a quorum for the purpose of electing directors. In the case of a second such meeting called after the lack of a quorum for a purpose other than or in addition to the election of directors, including amendment of the articles of incorporation or dissolution of the corporation, any number of members present shall constitute a quorum, notwithstanding any other provision of law to the contrary.

This statute allows the members, if unable to gain a quorum in the first called meeting, to establish a date and time for a second meeting pursuant to La.R.S. 12:230 (which requires written notice of the second meeting to be given at least ten days and not more than sixty days prior to said meeting).[1] At that second meeting,

---

[1] La.R.S. 12:230 provides:

Unless otherwise provided in the articles or by-laws, and except as otherwise provided in this Chapter, the authorized person or persons calling a members' meeting shall cause written notice of the time, place and purpose of the meeting to be given to all members entitled to vote at such meeting, at least ten days and not more than sixty days prior to the day fixed for the meeting. Notice of the annual meeting need not state the purpose thereof, except as otherwise provided in this Chapter if a specified action is to be taken at the meeting. If such written notice is placed in the United States mail, postage prepaid, and addressed to a member at his last known address, notice shall be deemed to have been given him. Notice of any meeting may be waived in writing by any member at any time; the written waiver need not specify the purpose of or the business to be transacted at the meeting; and such notice shall be deemed to have been given to, or waived by, all members present or represented at any such meeting except any member who, at the beginning of the meeting, objects to the transaction of any business because the meeting is not lawfully called or convened. Notice need not be given to any member with whom communication is made

'those who attend that second meeting, even if less that the required 50% quorum as set forth in the articles of incorporation, *"shall nevertheless constitute a quorum for the purpose of electing directors."* This statute provides a reasonable, legally permissible remedy for the membership to avoid potentially onerous quorum rules for the election of directors.

### DECREE

We therefore must reverse that portion of the trial court's judgment fixing the quorum at ten percent. We further declare the board members action on March 11, 2015 changing the quorum requirement from ten percent to fifty percent was contrary to and exceeded the authority granted the Board by the articles of incorporation. The articles of incorporation grant only the members of the corporation the authority to elect the board of directors and to change the vote requirement for accomplishing this end.

We affirm the portion of the trial court's judgment essentially recognizing that the articles of incorporation provides for voting by proxy by the members of the corporation. We amend the trial court's judgment to provide the current board of directors shall give proper notice in accordance with La.R.S. 12:230 to the members of the corporation that the staggered election which was originally scheduled for the first Monday of April, 2016, namely for the board of directors members, Todd Deville, Steve Vidrine and John Vidrine, will be held on the first Tuesday of September, 2017, being September 5, 2017. We further order that the staggered election of the next two directors, those positions from the 2014 election, shall be held on the regular annual election date of the 1st Monday of April 2018 and continuing each year in the staggered terms. This court further orders that these staggered elections shall be held in accordance with the articles of

unlawful by any law of the United States of America, or by any rule, regulation, proclamation or executive order issued under any such law; any action or meeting taken or held without notice to any such member shall have the same force and effect as if notice had been given to him as otherwise required.

11

incorporation or in accordance with La.R.S. 12:230 and 12:231 in the event a quorum is not present at the first meeting.[2]

**AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.**

---

[2] The use of La.R.S 12:230 and 12:231 to avoid the onerous fifty percent quorum requirement currently found in the articles of incorporation does not prevent the members of the corporation at the first meeting (with prior notice) or at any validly held subsequent meeting from amending the quorum requirement to provide a more feasible percentage.